**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

CHANEEL WALKER and
GAIL ALSTON,
   Plaintiffs,
       v.
LORRAINE THOMAS,
   Defendant.

**Civil Action No. 14-cv-515 (CKK)**

---

**MEMORANDUM OPINION**
(November 20, 2015)

Plaintiffs Chaneel Walker and Gail Alston ("Plaintiffs") filed the Complaint in the above-captioned action on March 27, 2014 against Defendant Lorraine Thomas ("Defendant"), alleging claims for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the District of Columbia Wage Payment and Collection Law, D.C. Code § 32–1301 *et seq.* ("DCWPCL"). *See* Compl., ECF No. [1]. Presently before the Court is Plaintiffs' Renewed Motion for Default Judgment. *See* ECF No. [24]. Upon consideration of Plaintiffs' submissions,[1] the relevant legal authorities, and the record as a whole, and for the reasons stated below, the Court shall GRANT Plaintiffs' Renewed Motion for Default Judgment and shall enter a JUDGMENT for Plaintiffs against Defendant in the amount of $60,098.94. Specifically, Defendant shall pay damages as follows:

- To Plaintiff Walker, $16,610.98 in unpaid wages and $16,610.98 in liquidated damages, for a total of $33,221.96.

---

[1] Plaintiffs' Complaint ("Compl."), ECF No. [1]; Exhibits A-L to Plaintiffs' Complaint, ECF No. [1-1]; Plaintiffs' Renewed Motion for Entry of Default Judgment, ECF No. [24], Plaintiffs' Memorandum in Support of Renewed Motion for Entry of Default Judgment ("Pls' Mem."), ECF No. [24-1]; Affidavit of Chaneel Walker ("Walker Affidavit"), ECF No. [24-2]; Affidavit of Gail Alston ("Alston Affidavit"), ECF No. [24-3]; Declaration of Meredith M. Ralls ("Ralls Decl."), ECF No. [24-4].

- To Plaintiff Alston, $12,252.44 in unpaid wages and $12,252.44 in liquidated damages, for a total of $24,504.88.

- To Plaintiffs Walker and Alston, $1,664.00 in attorneys' fees and $708.10 in court costs, for a total of $2,372.10.

# I. BACKGROUND

Plaintiffs' Complaint sets out the following allegations, which the Court takes as true for purposes of Plaintiffs' Renewed Motion for Default Judgment. *See Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F.Supp.2d 26, 30 (D.D.C. 2002).

Plaintiffs Walker and Alston are former federal contractors who were employed by Innovative Concept Solutions International, Inc. ("ICSI"), a company owned, operated, and managed by Defendant. Compl. ¶¶ 6-8.[2] Walker worked for ICSI from 2006 until April 2012, and was not compensated for certain hours worked in the fall of 2011 and the spring of 2012. *Id.* ¶ 6, 20-22. Walker also did not receive compensation for 240 hours of unused vacation time that had accrued over the course of Walker's employment. *Id.* ¶ 24. Alston worked for ICSI from August 2008 until April 2012 and was not compensated for certain hours worked in the spring of 2012. *Id.* ¶ 26-31. Both Plaintiffs worked for Defendant in connection with a federal contract between ICSI and the Smithsonian Institution. *Id.* ¶ 16. On or about April 27, 2012, the Smithsonian Institution terminated ICSI's contract because of illegal use of funds entrusted to

---

[2] Defendant, as owner of ICSI, maintained operational control over the company, including the work performed, environment, and conditions of employment and managerial decisions such as hiring, firing, compensating, supervising, creating schedules, and maintaining time and other employment records. Compl. ¶ 13. ICSI was a corporation authorized to do business under the laws of Maryland until 2001 when it forfeited its status for failure to pay property taxes. *Id.* ¶ 5. As such, ICSI subsequently operated as a sole proprietorship of Defendant, with Defendant remaining personally liable for the debts and actions of ICSI. *Id.*

Defendant and because the Department of Labor ruled that Defendant failed to pay its employees under applicable laws. *Id.* ¶ 32.[3]

On March 27, 2014, Plaintiffs filed the present action.[4]  On March 26, 2015, after Defendant had failed to plead or otherwise defend this action, Plaintiffs filed affidavits supporting an entry of default against Defendant.  ECF No. [17], [18].  On March 27, 2015, the Clerk of the Court entered a default against Defendant.  ECF No. [19].  On April 21, 2015, Plaintiffs filed their first motion for default judgment.  ECF No. [20].  On October 13, 2015, the Court denied without prejudice Plaintiff's motion because Plaintiffs failed to put forth sufficient evidence to allow the Court to determine damages.  *See* Walker v. Thomas, No. 14-CV-515 (CKK), 2015 WL 5952569 (D.D.C. Oct. 13, 2015).  The Court ordered Plaintiffs to file a revised motion, which at minimum, provided sworn affidavits from Plaintiffs, attesting under oath to certain information alleged in the Complaint.  *See* Order (Oct. 13, 2015), ECF No. [21].  On November 12, 2015, Plaintiffs filed their Second Motion for Default Judgment, which is presently before the Court.  ECF No. [24].

---

[3] On September 2, 2014, Defendant filed for bankruptcy in the United States Bankruptcy Court for the District of Maryland; however, Defendant's debts to Plaintiffs were not discharged as part of her bankruptcy. *See Walker v. Thomas*, No. 14-CV-515 (CKK), 2015 WL 5952569, at *1 (D.D.C. Oct. 13, 2015).

[4] This is the second action that Plaintiffs have filed against Defendant concerning the allegations raised in Plaintiffs' Complaint.  *See Walker v. Innovative Concept Solutions International* ("*Walker I*"), 1:12cv02046, Compl. ¶ 15 (Dec. 12, 2012), ECF No. [1].  In the first suit, Plaintiffs sued Defendant and ICSI.  *See id.*  The Court dismissed without prejudice the claims against Defendant for failure to serve the summons and complaint upon Defendant. *See Walker I*, Order (May 29, 2013), ECF No. [13].  As to the claims against ISCI, the Court twice denied without prejudice Plaintiffs' motions for default judgment on the basis that Plaintiffs failed to include evidentiary support for its damages claims.  *See Walker I*, Order (July 3, 2013), ECF No. [18], Order (Nov. 27, 2013), ECF No. [21].  When provided the opportunity to file a third motion for default judgment, Plaintiffs failed to do so, and the Court dismissed Plaintiffs' claims against ISCI for want of prosecution.  *See Walker I*, Order (Jan. 13, 2014), ECF No. [23].

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's request for a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  After a default has been entered by the Clerk, a party may move the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).  "The determination of whether default judgment is appropriate is committed to the discretion of the trial court."  *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co. Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (internal citation omitted).  "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain."  *Id.* (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).  Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested.  *Id.*  "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Id.* (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

## III.  DISCUSSION

In Plaintiffs' Second Motion for Default Judgment, Plaintiffs seek a default judgment against Defendant in the amount of $45,111.44 for Plaintiff Walker, $24,504.88 for Plaintiff Alston, and $3.074.10 for Plaintiffs' costs and fees.  *See* Pls.' Mem. at 5-6.  Both Walker and

Alston seek unpaid wages and liquidated damages under the FLSA and the DCWPCL. *Id.* In support of their requests, Plaintiffs submit affidavits signed by Walker and Alston, as well as exhibits containing, *inter alia*, communications concerning unpaid wages, copies of pay statements, and contemporaneous time records. *See* Walker Aff., ECF No. [24-2]; Alston Aff., ECF No. [24-3]; and Exhibits A-L to Plaintiffs' Complaint, ECF No. [1-1]. Plaintiffs also submit a Declaration of Plaintiffs' counsel as to attorney's fees and court costs. *See* Ralls Decl., ECF No. [24-4].

### A.  Legal Framework

Plaintiffs seek recovery under federal law, the FLSA, and D.C. law, the DCWPCL. The FLSA requires employers to pay their employees a minimum wage. 29 U.S.C. § 206. Where an employer violates the FLSA, the employer is liable for "unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). By contrast, the DCWPCL requires employers to pay any wages due to an employee, whether at the minimum rate, or at a higher rate, in regular intervals. D.C. Code Ann. § 32-1302. Any wages or other compensation due to an employee upon termination of employment must be paid within one working day. D.C. Code Ann. § 32-1303. The DCWPCL broadly defines "wages" to include unpaid vacation pay. *See Pleitez v. Carney*, 594 F. Supp. 2d 47, 48 (D.D.C. 2009) (citing *Jones v. District Parking Mgmt. Co.*, 268 A.2d 860, 861–62 (D.C. 1970)); *see also* D.C. Code Ann. § 32–1301(3). Both the FLSA and the DCWPCL have liquidated damages provisions, under which damages are calculated as an amount equal to the amount of unpaid wages. *See* 29 U.S.C. § 216(b); D.C. Code § 32–1303(4). Both statutes also allow for "reasonable" attorneys' fees and costs. *See* 29 U.S.C. § 216(b); D.C. Code Ann. § 32–1308(b).

**B.  Walker is entitled to recover a total of $33,221.96 from Defendant.**

Walker seeks to recover a total of $45,111.44 in unpaid wages and liquidated damages. Pls.' Mem. at 6.  Specifically, Walker seeks $1,339.47 in unpaid wages in 2011, $14,616.25 in unpaid wages in 2012, and $6,600.00 in unused vacation time accrued between 2006 and 2012. *Id.* 5-6.  Thus, the total amount of unpaid compensation sought by Walker is $22,555.72.  *Id.* at 5. Walker also seeks liquidated damages equal to the amount of unpaid wages that she seeks to recover, $22,555.72.

Upon close review of the record, the Court concludes that Walker is entitled to recover $894.73 in unpaid wages for work performed in 2011, $14,616.25 in unpaid wages for work performed in 2012, and $1,100.0 in unpaid vacation, for a total of $16,610.98 in unpaid wages. Walker is also entitled to recover liquidated damages as an amount equal to her unpaid wages, $16,610.98.  Therefore, Walker is entitled to recover a total of $33,221.96.

**1.  Walker has provided sufficient evidence to demonstrate that she is entitled to $894.73 in unpaid wages for work performed in 2011.**

Walker first alleges that she is owed $1,339.47 for work performed in 2011, citing an unauthorized payroll deduction in the amount of $444.74 and unpaid wages in the amount of $894.73 for the October 21, 2011 pay period.  *See* Pls.' Mem. at 5; Compl. ¶¶ 20(d), 20(f); Walker Aff. ¶ 3.

In support of Walker's claims, she submits a letter dated December 20, 2011 that she wrote to the General Services Administration and the Office of the Inspector General, requesting assistance in resolving back pay issues with regard to her employment at ISCI.  *See* Exhibit A to Complaint, ECF No. [1-1], at 1.  Attached to the December 20, 2011 letter are emails between Walker and certain ASCI representatives, including Defendant, that describe the cash flow and

payroll problems facing ACSI in late 2011.  *See id.* at 3-20.  In further support of Walker's claims, she submits a written correspondence between her and Defendant from early December 2011, indicating that ICSI had issued checks written on insufficient funds, released payments later than the agreed payroll dates, and inconsistently distributed paystubs.  *See* Exhibits B and G to Complaint, ECF No. [1-1], at 21-22, 27.  Walker also submits a pay statement for the pay period ending October 21, 2011, indicating that she was to be paid $1,952.50 for 71 hours worked, at an hourly rate of $27.50.  *See* Exhibit C to Complaint, ECF No. [1-1], at 23.  Finally, Walker attests to the circumstances concerning her unpaid wages in a signed affidavit.  Walker Aff. ¶ 3.

Upon close review of the record, the Court concludes that Walker has provided sufficient evidence to demonstrate that she is entitled to $894.73 in unpaid wages for work performed during the pay period ending October 21, 2011.  Plaintiff's paystub for the October 21, 2011 period clearly states that she worked 71 hours, at a rate of $27.50, for a total wage of $1,952.50.  Exhibit C to Complaint, ECF No. [1-1], at 23.  Plaintiff's sworn affidavit and Plaintiff's comments included in the attachments to her December 20, 2011 letter indicate that she received only $1,057.77 for the October 21, 2011 pay period—$894.73 less than her total earnings of $1,952.50.  *See* Walker Aff. ¶ 3; Exhibit A to Complaint, ECF No. [1-1], at 4.  The correspondences between Walker and ASCI representatives—which indicate that ISCI was facing significant payroll problems at the time when Defendant issued Walker's paycheck for the October 21, 2011 pay period—provide further support that Walker was likely not to have been paid in full.  *See* Exhibit A to Complaint, ECF No. [1-1], at 3-20.

The evidence, however, is not as clear with regard to the $444.74 deduction.  It appears from the paystub for the October 21, 2011 pay period that $444.74 was to be deducted from the earnings for that pay period.  *See* Exhibit C to Complaint, ECF No. [1-1], at 23.  However, there

is no evidence on the record suggesting that the amount actually paid to Walker for the October 21, 2011 time period—$1,057.77—was further reduced by the $444.74 deduction, or that Defendant "deducted" $444.74 from Walker's bank account.[5]   Walker's affidavit does not specifically discuss the deduction or shed any further light on the matter.  *See* Walker Aff. ¶ 3. Accordingly, the Court concludes, upon the evidence currently before the Court, that Plaintiff is not entitled to recover the alleged deduction.

In sum, Plaintiff's earned wages for the October 21, 2011 pay period were $1,952.50, but she only received payment in the amount of $1,057.77.  Plaintiff may therefore recover unpaid wages in the amount of the difference, $894.73.

### 2. Walker has provided sufficient evidence to demonstrate that she is entitled to $14,616.25 in unpaid wages for work performed in 2012.

Walker alleges that she is owed $14,616.25 in unpaid wages in 2012.  Pls.' Mem. at 5; Compl. ¶ 22; Walker Aff. ¶ 2.  Specifically, Walker claims that between January 23, 2012 and April 27, 2012, she worked 531.5 regular hours, at a rate of $27.50, and is therefore owed $14,626.25.  Pls.' Mot. at 5; Compl. ¶ 22; Walker Aff. ¶ 2.

In support of this claim, Walker submits a spreadsheet authored by Plaintiff, which she used to track the amount of unpaid hours that she worked for Defendant.  Walker Aff. ¶ 13, Exhibit I to Complaint, ECF No. [1-1], at 40.  In this spreadsheet, Plaintiff identifies 14 weeks between January 27, 2012 and April 27, 2012, during which she worked 531.50 hours, but was not paid.

---

[5] The Court observes that the paystub itself does not expressly state that the $444.74 amount was in fact deducted, or would be deducted.  Rather, the pay stub ambiguously states that an "amount owed [was] $444.73."  The Court further notes the discrepancy of one penny between the deduction amount alleged by Plaintiff and the amount owed according to the paystub.

*See* Exhibit I to Complaint, ECF No. [1-1], at 40.[6]   Much of the information in Plaintiff's spreadsheet is substantiated by Walker's time sheets, which were recorded contemporaneously with the weeks worked and were signed by Walker and her supervisor.   *See* Walker Aff. ¶ 12, Exhibit H to Complaint, ECF No. [1-1], at 28-39.   Walker also attests to this information in her affidavit.   *See* Walker Aff. ¶ 2.

Accordingly, the Court concludes that Walker has provided sufficient evidence to demonstrate that she is entitled to $14,616.25 in unpaid wages for 531.5 hours worked between January 23, 2012 and April 27, 2012.

> **3.   Walker has provided sufficient evidence to demonstrate that she is entitled to $1,100.00 in unpaid wages in the form of unused vacation time.**

Walker alleges that she is owed $6,600.00 for 240 hours of unused vacation time.   Pls.' Mem. at 5; Compl. ¶ 24; Walker Aff. ¶ 5.   Walker claims that Defendant represented to her that she would receive 2 weeks of vacation every year, but that Walker in fact was only allowed one week off each year.

In support of this claim, Plaintiff submits a spreadsheet authored by Plaintiff, which contains entries stating that in each year between 2006 and 2011, Walker used only one of her two weeks of vacation.   *See* Exhibit I to Complaint, ECF No. [1-1], at 40.   Walker also attests to this information in her affidavit.   Walker Aff. ¶ 5.   However, in a May 18, 2011 email from Walker to certain government officials, Plaintiff wrote that ICSI was "holding back . . . in a whole, 40 hours vacation."   Exhibit A to Complaint, ECF No. [1-1], at 17.   Plaintiff, in her May 18, 2011 email,

---

[6] The Court observes that the April 27, 2012 end date of the timesheets is also the approximate date that the Smithsonian Institute terminated its contract with ISCI.   *See* Compl. ¶ 23.

does not reference the vacation allegedly accrued from earlier years.  *See id.*  Plaintiff also does not provide any further supporting evidence, such as policies, contracts, old timesheets, etc.

Accordingly, the Court concludes that Walker has provided sufficient evidence to demonstrate that she is entitled to compensation for 40 hours of unused vacation at her hourly rate of $27.50, for a total of $1,100.00.  Without more evidence documenting the vacation accrual policies applicable to Walker's employment, the Court cannot reasonably conclude that she was entitled to more than the 40 hours of unused vacation indicated by Walker in her May 18, 2011 email.  *See* Exhibit A to Complaint, ECF No. [1-1], at 17.

### 4. Walker is entitled to liquidated damages in the amount of $16,610.98.

Walker is also entitled to liquidated damages as an amount equal to the amount of unpaid wages.  *See Pleitez*, 594 F. Supp. 2d at 50; 29 U.S.C. § 216(b); D.C. Code § 32–1303(4).

Specifically, under the DCWPCL, liquidated damages are calculated as "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to the unpaid wages, whichever is smaller."  D.C. Code § 32–1303(4).  Because Plaintiff has not yet been paid her wages, the lesser amount due under the DCWPCL is the "amount equal to the unpaid wages."  Therefore, Walker is entitled to liquidated damages in an amount equal to the sum of her unpaid wages, $16,610.98.

### C. Alston is entitled to recover a total of $24,504.88 from Defendant.

Alson seeks to recover a total of $24,504.88 in unpaid wages and liquidated damages.  Pls.' Mem. at 6.  Alston claims that she was not paid for work performed for Defendant between January 23, 2012 and April 27, 2012.  *Id.*

In support of Alston's claims, she submits a copy of a pay statement for the pay period ending January 20, 2012, indicating that her regular rate of pay was $25.89. *See* Exhibit K attached to Complaint, ECF No. [1-1], at 42. This pay statement, dated March 30, 2012, was issued more than two months after the pay period ended. *Id.* Alston also submits her time sheets between January 23, 2015 and April 27, 2012, which were recorded contemporaneously with the weeks worked and were signed by Alston and her supervisor. Alston Aff. ¶ 6, Exhibit L to Complaint, ECF No. [1-1], at 43-56. These time records indicate that Alston worked 544.25 hours during that time. *Id.* Alston, however, attests that she was not compensated for only 473.25 of those hours. Alston Aff. ¶ 2. At Alston's rate of $25.89 per hour, her unpaid wages total $12,252.44. *Id.*; Pls.' Mem. at 6.

Accordingly, upon close review of the record, the Court concludes that Alston has provided sufficient evidence to demonstrate that she is entitled $12,252.44 in unpaid wages for 473.25 hours worked between January 23, 2012 and April 27, 2012. Alston is also entitled to liquidated damages of an equal amount. Therefore, Alston is entitled to recover a total amount of $24,504.88. *See* D.C. Code § 32–1303(4).

### D.  Plaintiffs are entitled to recover $2,372.10 in attorneys' fees and court costs.

Finally, Plaintiffs are entitled to attorneys' fees and costs. Employees whose rights under the FLSA and DCWPCL are violated are entitled to "reasonable" attorneys' fees and costs. *See* 29 U.S.C. § 216(b); D.C. Code § 32–1308(b). "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888 (1984). The reasonableness of an hourly rate is normally determined by the prevailing market rate in a community. *Id.* at 895. An attorney's regular billing rate is presumptively reasonable as long as it "reflect[s],

among other things, the level of skill necessary to conduct the case and the attorney's reputation." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense,* 675 F.2d 1319, 1326 (D.C. Cir. 1982). Attorneys without a customary billing rate may establish the prevailing market rate for their services with published surveys of prevailing rates, like the *Laffey* matrix. *See Covington v. District of Columbia,* 57 F.3d 1101, 1109 (D.C. Cir. 1995).

Here, Plaintiffs seek $2,366 in attorney's fees and $708.10 in court costs, for a total of $3,074.10. Pls.' Mem. 6; Ralls Decl. ¶ 6. Plaintiffs seek attorney's fees for 9.1 hours of work performed by Plaintiff's attorney, including 2.7 hours spent on Plaintiff's first motion for default judgment and 1.3 hours spent on Plaintiff's second motion for default judgment. Ralls Decl. ¶ 6. Plaintiff's counsel indicates that the hourly rate for her time is $260.00. *Id.*

The Court finds that the attorney's indicated rate of $260.00 per hour is reasonable in light of the Laffey Matrix, which sets forth a minimum hourly rate for attorneys of $255.00 per hour.[7] With regard to the hours expended by Plaintiff's attorney, the Court does not find it reasonable to award attorney's fees for the 2.7 hours spent by Plaintiff's counsel on Plaintiff's first motion for default judgment, which the Court denied without prejudice because it insufficiently put forward the required evidence for a determination of damages. *See Walker v. Thomas*, No. 14-CV-515 (CKK), 2015 WL 5952569 (D.D.C. Oct. 13, 2015). The Court, however, shall award attorney's fees for the remaining 6.4 hours of work performed by Plaintiff's counsel, which at the rate of $260.00 per hour, is equal to $1,664.00. In addition to the $1,664.00 in attorney's fees, the Court shall also award $708.10 in reasonable court costs, for a total of $2,372.10.

---

[7] The 2014-2015 Laffey Matrix is available at http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf.

## IV.  CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Plaintiffs' Renewed Motion for Default Judgment and ORDERS that the Court enter JUDGMENT for Plaintiffs against Defendant in the amount of $60,098.94.  Defendant shall pay damages as follows:

- To Plaintiff Walker, $16,610.98 in unpaid wages and $16,610.98 in liquidated damages, for a total of $33,221.96.

- To Plaintiff Alston, $12,252.44 in unpaid wages and $12,252.44 in liquidated damages, for a total of $24,504.88.

- To Plaintiffs Walker and Alston, $1,664.00 in attorneys' fees and $708.10 in court costs, for a total of $2,372.10.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE